UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE SEWELL,
    Plaintiff, on behalf of himself
    and others similarly situated,

v.

BEST BUY CO., INC., a foreign corporation,
BEST BUY STORES, L.P., a foreign limited partnership, and
AIG WARRANTYGUARD, INC., a foreign corporation,
    Defendants.
_____/

ROY, SHECTER & VOCHT, P.C.
Michelle E. Vocht (P32924)
Lynn H. Shecter (P24845)
Attorneys for Plaintiff
36700 Woodward Ave., Ste. 205
Bloomfield Hills, MI 48304
(248) 540-7660
vocht@rsmv.com
shecter@rsmv.com
_____/

COMPLAINT AND JURY DEMAND

Plaintiff, Bruce Sewell, on behalf of himself and others similarly situated and

represented by his attorneys, Roy, Shecter & Vocht, P.C., complains:

COMMON ALLEGATIONS

1.    Plaintiff, Bruce Sewell is a citizen of Southfield, Oakland County, Michigan.

2.    Defendant, Best Buy, Co., Inc. [Best Buy] is a citizen of the State of Minnesota.

1

3.      Defendant, Best Buy Stores, L.P. [BBS] is a limited partnership which is a citizen of Virginia.

4.      Defendant, AIG WarrantyGuard, Inc. [AIG] is a citizen of the State of Delaware.

5.      The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and this Court has jurisdiction pursuant to diversity of citizenship as described in 28 USC sec. 1332, and venue pursuant to 28 USC sec. 1391(a).

GENERAL AND FACTUAL ALLEGATIONS

6.      Defendant Best Buy operates approximately 24 retail stores in the State of Michigan and sells to consumers computer and wireless products for home office use.

7.      At the point of purchase, Defendant Best Buy offers to consumers the option of purchasing an extended warranty for two or three years, the terms and conditions of which are contained in a preprinted standardized brochure entitled "Performance Service Plan: Computer, Home Office and Wireless Products" [Performance Service Plan] which is provided to customers who purchase the extended warranty. A copy of the Performance Service Plan is incorporated in its entirety and attached to this Complaint as Exhibit A.

8.      According to Exhibit A, the Defendants BBS and AIG are indicated as obligors and underwriters of the Performance Service Plan.

9.      Exhibit A expressly provides:

> This is a legal contract. By purchasing it, you understand that it is such a contract and acknowledge that you have had the opportunity to read the Terms and Conditions set forth herein.

10.     The only differences between a two year and a three year plan, under Exhibit A, are

the price of the plan with a two year plan costing less than a three year plan, and the expiration date of the plan which would reflect either a two year or three year period from a customer's point of purchase.

11.     On or about March 7, 2005, Plaintiff, Bruce Sewell, purchased products from and paid the following prices to Defendant Best Buy's store (#404), located in Southfield, Michigan:

>    Viewsonic 17" LCD Monitor
>    VX710
>    Price: $379.99
>
>    HP Pavilion CPU
>    Serial Number:  MXK5060P9T
>    Price:  $769.00
>
>    HP PSC 2355-All-in-One Printer, Scanner, Copier
>    Serial Number:  MY4ATF5036
>    Price: $179.99

12.     At the same time and at the point of purchase, on or about March 7, 2005, Plaintiff was offered by Defendant the purchase of the extended warranty, Exhibit A, the Performance Service Plan.

13.     Plaintiff accepted the extended warranty, Exhibit A, the Performance Service Plan, for three years by paying to Defendant Best Buy the amount of $199.99.

14.     At the same time and at the point of purchase, Plaintiff was granted rebates or discounts on the items he purchased which required him to mail or to submit coupons, supplied by Defendant Best Buy, to the manufacturer or to Defendant Best Buy, in order to receive any rebates.

15.     Plaintiff followed all requirements of the rebate instructions supplied by Defendant Best Buy, filled out the coupons, mailed the coupons to identified addresses and the rebates were paid to him.

16.     In June of 2006, Plaintiff experienced performance problems with the Viewsonic 17" LCD Monitor, and brought that monitor to the technical services area of Best Buy for examination and repair as prescribed under the extended warranty, Exhibit A, the Performance Service Plan.

17.     Within approximately two to ten days thereafter, Defendant Best Buy notified Plaintiff, Bruce Sewell that the Viewsonic 17" LCD Monitor was not capable of repair by its technical services personnel.

18.     Within a short time of Defendant Best Buy's notification described in paragraph 17 above, Plaintiff went to Defendant Best Buy to obtain a comparable replacement monitor or original purchase price voucher as set forth within the extended warranty, Exhibit A, the Performance Service Plan.

19.     At that time, Plaintiff was informed that in order to obtain a comparable replacement monitor or original purchase price voucher, he would be required to pay an additional $150.00 which Defendant Best Buy represented was the amount of one or more of the rebates that the Plaintiff received on his purchase of home office products.

20.     According to Plaintiff's sales slip, a copy of which is attached and incorporated by reference as Exhibit B, he was granted and received a combination of manufacturer and Best Buy rebates as follows:

```
"55010      HP Back to Busines[s]    [$]  50.00
 55340      Viewsonic VX710 17       [$]  50.00
 56391      HP 2355 $20 MIR 20       [$]  20.00
 56570      HP printers $50 pr       [$]  50.00
 56610      BBY $150 off selec       [$]150.00
 56614      BBY $20 CPU Bundle       [$]  20.00"
```

21.     Plaintiff objected to the $150.00 charge on the basis that it was not a term or condition for exercise of the comparable product exchange or original purchase price voucher of the extended warranty, Exhibit A, the Performance Service Plan, and Plaintiff left Defendant Best Buy's store without obtaining a comparable replacement product or original purchase price voucher.

22.     Shortly thereafter, Plaintiff contacted Defendant Best Buy's national consumer center by calling its toll free number and complained about having to pay $150.00 prior to obtaining a replacement product or original purchase price voucher under the extended warranty, Exhibit A, the Performance Service Plan, and was told by Best Buy's customer service agent that it was a matter of company policy to require refund of rebates as a condition to receipt of comparable replacement products or vouchers under the extended warranty, Exhibit A, the Performance Service Plan.

23.     On or about July 23, 2006, Plaintiff went back to Defendant Best Buy at which time the Manager of the store reaffirmed to him that it was company policy to charge back rebates to the customer before honoring the extended warranty, Exhibit A, the Performance Service Plan, and further informed him that instead of paying $150.00 that Plaintiff would only have to pay $50.00 to obtain the replacement monitor.

24.     At that time the only comparable replacement monitor available at the Defendant's Southfield, Michigan store (#404) was a Samsung Sync Master 204B 20.1" Monitor, Serial Number: BR20HVFL403567B with an on-sale price of $279.99 ($319.99 discounted by $40.00) which the Defendant sold to Plaintiff after his additional payment of $53.00, $50.00 constituting payment of the rebate and $3.00 in sales tax.  A copy of the receipt for the July 23, 2006 replacement transaction is attached and incorporated by reference as Exhibit C.

25.     Pre-payment of any rebates granted and/or received is not an express term or condition of Defendant's standardized extended warranty, Exhibit A, the Performance Service Plan or of any subsequent standardized performance service plan offered by Defendant Best Buy.

26.     Subsequent to the purchase by Plaintiff of the computer and home office products and the parties' entry into Exhibit A, the Performance Service Plan. the Defendants unilaterally amended their standardized Performance Service Plan to change the title of it to "Performance Service Plan 3 Year and 2 Year CPU & Wireless Products", to include reference to Defendant Best Buy Co., Inc., to include a sixty (60) day insurance company notification provision for claims and to add language providing that "[t]he sales receipt containing the length of the service contract, commencement date and product identification constitute the entire agreement" .  A copy of Defendants' amended Performance Service Plan 3 Year and 2 Year CPU & Wireless Products is attached and incorporated by reference as Exhibit D.

27.     The amended Performance Service Plan, Exhibit D, does not remedy the defect and

violations of the Performance Service Plan, Exhibit A, pertaining to the pre-payment of rebates as a condition precedent to obtaining comparable replacement products or vouchers pursuant to the extended warranty/ performance service plan.

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated.

29. The class is composed of i) any person who purchased computers, home office and wireless products from any Best Buy store located in the State of Michigan for personal, family, or household purposes; and ii) who, at the point of such purchase or immediately thereafter, also purchased either a two or three year extended warranty/performance service plan for those products; and iii) who, during the time of the extended warranty/performance service plan, was required to pay rebate or discount dollars to Defendant Best Buy as a condition precedent to obtaining comparable replacement products or voucher pursuant to the extended warranty/ performance service plan.

30. During the relevant time applicable to this matter and according to Defendant's Best Buy Store Locator web site(http://www.bestbuy.com), the Defendant Best Buy has operated approximately 24 retail stores at different locations within the State of Michigan, and the class is so numerous that joinder of all class members is impracticable.

31. There are questions of law and fact common to the class, including, *inter alia*:

    a) Whether the performance service plan constitutes an express warranty under Michigan law;

b) Whether the performance service plan is an enforceable contract;

c) Whether, as a matter of law, the performance service plan fairly, fully and clearly informs consumer purchasers of Defendant's policy of requiring payment of rebates as a condition precedent to comparable replacement of products or an original purchase price voucher;

d) Whether the Defendant can require a consumer who has purchased a performance service plan to pay all or some of a rebate to Defendant Best Buy as a condition precedent to acquiring comparable replacement of products;

e) What the terms and conditions of the performance service plan are;

f) Whether Defendant is entitled to vary, modify or amend the terms and conditions of the performance service plan using pre-printed material contained on the back of receipts or on other various slips of paper that are separate from the performance service plan;

g) Whether the separate receipts and other various slips of paper provided by Defendant to consumers at the point of purchase clearly, legibly and fairly advise a consumer of his or her rights and obligations with respect to the performance service plan and the effect of rebates on the terms and conditions of the performance service plan;

h) Whether a company policy can vary, modify or amend the terms and conditions of the performance service plan;

i) Whether the performance service plan violates the Michigan Consumer Protection Act, including but not limited to MCLA 445.903(n)(s)(t)(w)(bb) and (cc);

j) Whether failure to prominently and clearly state in the same document as the preprinted standardized performance service plan distributed at or near the point of purchase that rebates must be paid to Best Buy as a condition precedent to Defendant Best Buy's honoring of the comparable replacement product and the original price voucher provision of the performance service plan constitutes a silent fraud;

k) Whether the requirement that a customer pay any rebate prior to full comparable replacement of a defective product or original purchase price voucher under the performance service plan is a hidden charge and a deceptive practice;

l) Whether Defendant Best Buy was unjustly enriched as a result of its collection of rebates prior to its honoring the comparable replacement product provision of the performance service plan, and should be required to provide restitution of any sums collected from consumers as a result of Defendant Best Buy's practice;

m) Whether Defendant Best Buy was unjustly enriched and obtained profits from the practice of requiring customers to pay any rebates prior to providing to full comparable replacement of a defective product or an original purchase price voucher under the performance service plan and whether those profits should be disgorged and placed in a constructive trust for class members.

n) Whether a permanent injunction should issue enjoining the practice of requiring payment of rebates prior to providing replacement of a defective product or an original purchase price voucher under the performance service plan, and require that Defendant Best Buy revise the language and coverage of the performance service plan so

that it clearly discloses in bold print that rebates earned need not be paid as a condition precedent to the performance service plan; and clearly and prominently discloses to customers prior to purchase of any performance service plan offered by Defendant Best Buy that any or all rebates provided to the holder of a performance service plan will have to be paid to Defendant Best Buy prior to providing full comparable replacement of a defective product or original purchase price voucher.

32. The claims of the representative party are typical of the claims of the class in that Plaintiff's claims are aligned with and fairly encompass the claims of the class he seeks to represent, and, in pursuing his own claim, he will advance the interests of the class members.

33. Plaintiff will fairly and adequately protect the interests of the members of the class and Plaintiff has no interests which are contrary to or in conflict with those of the class he seeks to represent. Plaintiff has retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

34. Prosecuting separate actions by class members would create the risk that incompatible standards of conduct would be imposed upon the Defendants as opposed to a uniform and collective resolution of the Defendants' practices and policies on a scale encompassing all stores within the State of Michigan and other Best Buy stores in other states where replacement product vouchers issued by Michigan stores may be used.

35. An adjudication with respect to Plaintiff's equitable and injunctive claims will, as a practical matter, be dispositive of the other members' claims and would substantially impede

or impair individual members should this matter not be certified.

36.   Defendants have acted on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

37.   Questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

38.   Absent a representative action, the members of the class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy, and allowing Defendant to retain the proceeds of its ill-gotten gains.

COUNT I
VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
[MCPA] MCLA 445.901, *et seq*

39.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth.

40.   Defendants are people engaged in trade and commerce.

41.   In Defendants' commercial dealings with Plaintiff and other similarly situated consumers, Defendants engaged in deceptive and unfair trade practices by acts and omissions, including, but not limited to the following:

    i)   By causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of the parties to a transaction in violation of MCLA 445.903(n);

    ii)  By failing to reveal a material fact, the omission of which tends to

mislead or deceive the consumer, and which fact could not reasonably be known by the consumer in violation of MCLA 445.903(s).

   iii) By entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it in violation of MCLA 445.903(t).

   iv) By representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the benefit is contingent on an event to occur subsequent to the consummation of the transaction in violation of MCLA 445.903(w);

   v) By making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is in violation of MCLA 445.903(bb);

   vi) By failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner in violation of MCLA 445.903(cc).

42. As a result of the violations of MCPA, Plaintiff and others similarly situated to Plaintiff, have been damaged.

## REQUEST FOR RELIEF

Plaintiff, on behalf of himself and others similarly situated to him, requests:

 a) A full refund or restitution to Plaintiff and to others similarly situated to Plaintiff of the amount of any payment that was required prior to obtaining a comparable

replacement product or original purchase price voucher;

   b)   Disgorgement of any profit to be placed into a constructive trust on behalf of Plaintiff and those similarly situated to Plaintiff;

   c)   Either specific performance or restitution of the price of the performance improvement plan for any person who was unable to pay the rebate prior to obtaining a comparable replacement product or original purchase price voucher and who, therefore, did not receive a comparable replacement product or original purchase price voucher;

   d)   Declaratory relief declaring that payment of rebates as a condition precedent to honoring the comparable replacement product portion or original purchase price voucher of the performance service plans offered by Defendants is a deceptive practice and is null and void retroactively, at present and for future purchasers;

   e)   Injunctive or equitable relief enjoining and reforming the program, practice and policy of requiring payment of rebates prior to providing full comparable replacement of a defective product or an original purchase price voucher; and whatever other equitable and injunctive relief the court deems appropriate;

   f)   The costs of providing any notices to the class as provided by MCPA.

   g)   Costs and attorney fees to prosecute this action allowable by statute and law.

COUNT II
BREACH OF EXPRESS WARRANTY
MCLA 440.2313

43.   Plaintiff incorporates all previous paragraphs.

44.   Exhibits A and D, the performance services plans, are affirmations of fact or promises

made by the seller of goods to a buyer about the sale of goods and make representations relating to those goods, including replacement of defective goods by comparable goods or by refund of the original price for the goods.

45.     Exhibits A and D, the performance services plans, constitute express warranties pursuant to MCLA 440.2313(1)(a) and (2).

46.     Defendants' requirement that Plaintiff and persons similarly situated to Plaintiff pay rebate amounts prior to comparable replacement of a defective product or an original purchase price voucher is a breach of the express warranties, Exhibits A and D, performance service plans.

47.     As a result of the Defendants' breach of express warranty, Plaintiff and those similarly situated to him were damaged.

### REQUEST FOR RELIEF

Plaintiff, on behalf of himself and others similarly situated to him, requests:

a)     A full refund or restitution to Plaintiff and to others similarly situated to Plaintiff of the amount of any payment that was required prior to obtaining a comparable replacement product or original purchase price voucher;

b)     Disgorgement of any profit to be placed into a constructive trust on behalf of Plaintiff and those similarly situated to Plaintiff;

c)     Either specific performance or restitution of the price of the performance improvement plan for any person who was unable to pay the rebate prior to obtaining a comparable replacement product or original purchase price voucher and who, therefore, did

not receive a comparable replacement product or original purchase price voucher;

      d)    Declaratory relief declaring that payment of rebates as a condition precedent to providing comparable replacement product portion or an original purchase price voucher under the performance service plans offered by Defendants is a breach of express warranty and is null and void retroactively, at present and for future purchasers;

      e)    Injunctive or equitable relief enjoining and reforming the program, practice and policy of requiring payment of rebates prior to providing full comparable replacement of a defective product or an original purchase price voucher; and whatever other equitable and injunctive relief the court deems appropriate;

      f)    The costs of providing any notices to the class.

      g)    Costs and attorney fees to prosecute this action allowable by law.

## COUNT III
## BREACH OF CONTRACT

48.    Plaintiff incorporates by reference all of the previous paragraphs.

49.    Exhibits A and D, the performance service plans, are contracts.

50.    Defendants' requirement that Plaintiff and others similarly situated to him pay rebate amounts as a condition precedent to providing full comparable replacement of a defective product or an original purchase price voucher is a breach of contract.

51.    As a result of Defendants' breach of contract, Plaintiff and those similarly situated to him were damaged.

## REQUEST FOR RELIEF

Plaintiff, on behalf of himself and others similarly situated to him, requests:

a) A full refund or restitution to Plaintiff and to others similarly situated to Plaintiff of the amount of any payment that was required prior to obtaining a comparable replacement product or original purchase price voucher;

b) Disgorgement of any profit to be placed into a constructive trust on behalf of Plaintiff and those similarly situated to Plaintiff;

c) Either specific performance or restitution of the price of the performance improvement plan for any person who was unable to pay the rebate prior to obtaining a comparable replacement product or original purchase price voucher and who, therefore, did not receive a comparable replacement product or original purchase price voucher;

d) Declaratory relief declaring that payment of rebates as a condition precedent to providing comparable replacement product portion or an original purchase price voucher under the performance service plans offered by Defendants is a breach of express warranty and is null and void retroactively, at present and for future purchasers;

e) Injunctive or equitable relief enjoining and reforming the program, practice and policy of requiring payment of rebates prior to providing full comparable replacement of a defective product or an original purchase price voucher; and whatever other equitable and injunctive relief the court deems appropriate;

f) The costs of providing any notices to the class.

g) Costs and attorney fees to prosecute this action allowable by law.

COUNT IV

## SILENT FRAUD

52. Plaintiff incorporates by reference all previous paragraphs.

53. The requirement that a purchaser of a protection service plan must pay any rebates as a condition precedent to the Defendants providing either a full comparable replacement of a defective product or an original purchase price voucher is a material omission from Exhibits A and D.

54. Defendants had an affirmative duty to disclose the fact that Defendants would require that holders of a protection service plan had to pay a rebate amount as a condition precedent to the Defendants providing either a full comparable replacement of a defective product or an original purchase price voucher is a material omission from Exhibits A and D.

55. The Defendants failed to disclose the rebate payment requirement when they had a duty to do so.

56. The Defendants intended to induce Plaintiff and others similarly situated to Plaintiff to rely on their nondisclosure.

57. As a result of Defendants' silent fraud, Plaintiff and others similarly situated to him were damaged.

## REQUEST FOR RELIEF

Plaintiff, on behalf of himself and others similarly situated to him, requests:

a) A full refund or restitution to Plaintiff and to others similarly situated to Plaintiff of the amount of any payment that was required prior to obtaining a comparable replacement product or original purchase price voucher;

b) Disgorgement of any profit to be placed into a constructive trust on behalf of Plaintiff and those similarly situated to Plaintiff;

c) Either specific performance or restitution of the price of the performance improvement plan for any person who was unable to pay the rebate prior to obtaining a comparable replacement product or original purchase price voucher and who, therefore, did not receive a comparable replacement product or original purchase price voucher;

d) Declaratory relief declaring that payment of rebates as a condition precedent to providing comparable replacement product portion or an original purchase price voucher under the performance service plans offered by Defendants is a breach of express warranty and is null and void retroactively, at present and for future purchasers;

e) Injunctive or equitable relief enjoining and reforming the program, practice and policy of requiring payment of rebates prior to providing full comparable replacement of a defective product or an original purchase price voucher; and whatever other equitable and injunctive relief the court deems appropriate;

f) The costs of providing any notices to the class.

g) Costs and attorney fees to prosecute this action allowable by law.

## COUNT V
## UNJUST ENRICHMENT

58. Plaintiff incorporates the previous paragraphs by reference.

59. Defendants derived a benefit from the purchase by Plaintiff and others similarly situated of the payment service plans and further derived a benefit from payment of a rebate

prior to providing a comparable replacement product or original price voucher to Plaintiffs and to others similarly situated.

60.  Defendants' retention of the benefit derived from the payment of the rebate results in inequity to Plaintiff and to others similarly situated to Plaintiff.

### REQUEST FOR RELIEF

Plaintiff, on behalf of himself and others similarly situated to him, requests:

a)  A full refund or restitution to Plaintiff and to others similarly situated to Plaintiff of the amount of any payment that was required prior to obtaining a comparable replacement product or original purchase price voucher;

b)  Disgorgement of any profit to be placed into a constructive trust on behalf of Plaintiff and those similarly situated to Plaintiff;

c)  Either specific performance or restitution of the price of the performance improvement plan for any person who was unable to pay the rebate prior to obtaining a comparable replacement product or original purchase price voucher and who, therefore, did not receive a comparable replacement product or original purchase price voucher;

d)  Declaratory relief declaring that payment of rebates as a condition precedent to providing comparable replacement product portion or an original purchase price voucher under the performance service plans offered by Defendants is a breach of express warranty and is null and void retroactively, at present and for future purchasers;

e)  Injunctive or equitable relief enjoining and reforming the program, practice and policy of requiring payment of rebates prior to providing full comparable replacement of

a defective product or an original purchase price voucher; and whatever other equitable and injunctive relief the court deems appropriate;

      f)      The costs of providing any notices to the class.

      g)      Costs and attorney fees to prosecute this action allowable by law.

### JURY DEMAND

Plaintiff, on behalf of himself and others similarly situated to him, requests a jury trial for those claims triable by jury.

          ROY, SHECTER & VOCHT, P.C.

          s/Michelle E. Vocht
          Michelle E. Vocht
          Lynn H. Shecter
          Attorneys for Plaintiff
          36700 Woodward Ave., Ste. 205
          Bloomfield Hills, MI 48304
          (248) 540-7660
          vocht@rsmv.com
          shecter@rsmv.com
          (P32924)
          (P24845)

Dated: September 13, 2008